UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GERALD HENNEGHAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.  12-0652 (EGS) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant District of Columbia's Motion to Dismiss and/or Motion for Summary Judgment.[1] For the reasons discussed below, the motion to dismiss will be granted, and the motion for summary judgment will be denied.

I.  BACKGROUND

Plaintiff Gerald Henneghan ("Henneghan"), an African-American male, resided in the District of Columbia with his adult daughter, Tempestuous Henneghan, and three minor sons. *See* Compl. at 1 (caption), 10 (page numbers designated by ECF).  Reports of suspected child neglect apparently came to the attention of social workers at the District of Columbia's Child and Family Services Agency ("CFSA"); an investigation revealed that the residence lacked electricity and running water.  *See id.* at 10.  Henneghan represented that he "used battery powered illumination and smoke detectors," as well as "500 gallons of collected rain water and 200 gallons of fresh bottled water" for the family's use.  *Id.*

---

[1] Plaintiffs' motion for sanctions [Dkt. #11] is meritless, and it will be denied.

Henneghan alleges that, on January 26, 2012, a CFSA representative visited the residence "to re-investigate the previous . . . investigator's investigation because of a complaint" the agency had received, *id.* at 10, and that the representative deemed the home "uninhabitable" due to the lack of water service, *id.* at 11. Notwithstanding arrangements he had made with the District of Columbia Water and Sewer Authority for restoration of water service, *id.*, Henneghan alleges that, on January 27, 2012, the CFSA representative arrived at the residence with six Metropolitan Police Department officers and two inspectors from the District's Department of Consumer and Regulatory Affairs ("DCRA"). *Id.*

At that time, the police officers allegedly "raided plaintiffs['] property, seized plaintiffs['] propert[y] in violation of plaintiffs['] constitutional rights against unlawful searches and seizures[,] and provided armed access" to the CFSA and DCRA agents. *Id.* at 12. Further, these agents allegedly "falsely imprisoned plaintiffs inside of their property while the District government defendants siezed [sic] photographs of plaintiffs['] property against the will of the plaintiffs." *Id.* Plaintiffs allegedly were given "30 minutes to pack some clothes and get out of [the] house." *Id.* Henneghan was not given "any notice of purported violations," *id.*, and he was told that the residence would "be closed until plaintiffs allow[ed CFSA] and DCRA to perform periodic joint inspections of [the] property." *Id.* at 12-13. According to Henneghan, the District's agents "displaced and evicted plaintiffs from their home with[out] due process or equal access to the law and in violation of plaintiffs['] federally protected rights." *Id.* at 13.

Plaintiffs relocated to Prince George's County, Maryland. *See id.* at 13, 15. Notwithstanding their move outside of the District of Columbia, the District apparently petitioned for and obtained temporary emergency custody of the minor children. *See id.* at 14. On January 28, 2012, District agents executed a court order with the assistance of Prince

George's County police officers. *Id.* at 15. According to Henneghan, the allegations of neglect were unfounded, *see* Plaintiffs['] Responses to Defen[d]ant's Motion to Dismiss and Plaintiffs['] Motion for Sanctions on Account of Defendant's Intentionally Misleading the Court While Knowing the Same or Any Material Part Thereof to be False ("Pls.' Opp'n") ¶ 3.

According to plaintiffs, they were denied "access and application to participate in [the] District government's federally funded abatement fund and federally and locally funded 'Financial Hardship Emergency Financial Assistance' that white families in similar situated position have received," Compl. at 13, and were subjected to discrimination and harassment, *see id.* at 10, because of their "race, sex, familiar status, homeschool and in retaliation on account of . . . Henneghan's complaints against the defendants," *id.* at 16. Plaintiffs bring this action under 42 U.S.C. §§ 1981 and 1982, *id.* at 17-18, 19-20, and under the District of Columbia Human Rights Act ("DCHRA"), *see* D.C. Code §§ 2-1402.01-1404.04. Their demand for compensatory and punitive damages totals $150 million. *See* Compl. at 18-20.

II. DISCUSSION

*A. Dismissal Under Rule 12(b)(6)*

The District of Columbia moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' complaint on the ground that it fails to state claims upon which relief can be granted.[2] *See generally* Memorandum of Points and Authorities in Support of

---

[2] The District moves for summary judgment on the ground that plaintiffs failed to comply with the mandatory notice requirements of D.C. Code § 12-309. *See* Def.'s Mot. at 8-9. In relevant part, the statute provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his

3

Defendant District of Columbia's Motion to Dismiss and/or Motion for Summary Judgment ("Def.'s Mem.") at 5-8, 9-10.

Plaintiffs need only provide a "short and plain statement of [their] claim showing that [they are] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff[s] will prevail on the merits, but instead whether the plaintiff[s] ha[ve] properly stated a claim." *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000). In considering such a motion, the "complaint is construed liberally in the plaintiffs' favor, and [the Court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, "the [C]ourt need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* Nor must the Court accept "a legal conclusion couched as a factual allegation,"

---

agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309. The District of Columbia Court of Appeals has clarified that Section 12-309 "is not, and does not function as, a statute of limitations. Rather, it imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is 'mandatory as a prerequisite to filing suit against the District." *Barnhardt v. District of Columbia*, 8 A.3d 1206, 1209 (D.C. 2010) (internal quotation marks and citations omitted). Section 12-309 also "applies to claims for unliquidated damages brought against the District of Columbia under the DCHRA." *Owens v. District of Columbia,* 993 A.2d 1085, 1089 (D.C. 2010).

The District represents that plaintiffs failed to submit notice of their claim, *see* Def.'s Mem., Decl. of Lana Craven ¶ 4, and plaintiffs claim to have mailed a notice to the Mayor on January 28, 2012, *see* Pl.'s Opp'n, Decl. of Gerald Henneghan ¶ 1. Summary judgment cannot be granted for the District in light of this factual dispute.

nor "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly,* 550 U.S. at 556). "[A] complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Although a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

### B. Plaintiffs Concede the District's Motion

The Court has reviewed plaintiffs' opposition to the District's motion to dismiss, and finds that it utterly fails to address the substantive arguments the District makes. Under these circumstances, the Court may treat as conceded any argument raised in the motion which the opposing parties fail to address. *See, e.g., Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) (granting defendant's motion to dismiss as conceded where plaintiff "fails to address the arguments advanced by the defendant in support of dismissing the § 1981 claim"); *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 59 (D.D.C. 2009) ("Plaintiffs fail to address the 'custom or policy' issue in their response to Defendants' motion for summary judgment. Having

failed to contest these facts and this argument, they are deemed conceded."); *see also Fed. Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Notwithstanding plaintiffs' concession, the Court will address each claim briefly.

### C. Plaintiffs Fail to State Claims Upon Which Relief Can Be Granted

#### 1. Section 1981

"All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," 42 U.S.C. § 1981(a), "without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006). A viable "claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff[s] ha[ve] rights," whether "racial discrimination blocks the creation of a contractual relationship [or] impairs an existing contractual relationship," *McDonald*, 546 U.S. at 476. A claim under § 1981 against a state actor such as the District of Columbia requires that plaintiffs "show that the violation of [their] right to make contracts protected by § 1981 was caused by a custom or policy within the meaning of *Monell* [*v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978)] and subsequent cases." *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 735-36 (1989) (internal quotation marks omitted). In other words, plaintiffs must allege that a custom or policy of the District of Columbia, *see Monell,* 436 U.S. at 694, caused the impairment of a contractual relationship, thus establishing an affirmative link between the municipal policy and the constitutional violation of which they complain, *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).

Absent from the complaint are any allegations with respect to an existing contractual relationship or impairment with the creation of a contractual relationship between plaintiffs and the District of Columbia. Nor does the complaint allege the existence or implementation of a municipal policy, custom or practice which caused the constitutional violations of which plaintiffs complain. Plaintiffs' complaint is fatally flawed in these two respects, and their § 1981 claim therefore must be dismissed. *See Peters v. District of Columbia*, 873 F. Supp. 2d 158, 208, (D.D.C. 2012) (dismissing claims under §§ 1981 and 1983 where, "[o]ther than conclusory allegations in the prefatory section of the Second Amended Complaint, the plaintiffs do not allege that any District official explicitly condoned, knowingly ignored, or failed to respond in a manner showing deliberate indifference to discriminatory activity based on race, age or national origin within CFSA").

2.  Section 1982

Plaintiffs are no more successful in stating a claim under 42 U.S.C. § 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." *Id.* "To state a claim under § 1982, the plaintiff[s] must allege with specificity facts sufficient to show or raise a plausible inference of 1) the defendant's racial animus; 2) intentional discrimination; and 3) that the defendant deprived plaintiff[s] of [their] rights because of [their] race." *Garg v. Albany Indus. Devel. Agency*, 899 F. Supp. 961, 968 (N.D.N.Y. 1995) (citation omitted), *aff'd*, 104 F.3d 351 (2d Cir. 1996); *see Dirden v. Dep't of Housing & Urban Devel.*, 86 F.3d 112, 114 (8th Cir. 1996) ("To prevail on a claim under 42 U.S.C. § 1981 [and] 42 U.S.C. § 1982 . . . , a plaintiff must prove discriminatory intent.").

7

From the vague and conclusory statements set forth in the complaint, the Court identifies no allegations of the District's racial animus, intentional discrimination, or deprivation of property rights because of plaintiffs' race.  The claim under § 1982 also must be dismissed.  *See Watson v. Clark*, No. 1:07-CV-30, 2007 WL 1170735, at *5 (E.D. Tex. Apr. 18, 2007) (dismissing § 1982 claim where "complaint contains no factual allegations as to [plaintiff's] race, and no allegations that the conduct of any defendant was motivated by racial animus").

### 3.  District of Columbia Human Rights Act

Plaintiffs purport to bring a claim under the DCHRA, *see* Compl. at 18, yet fail to mention a provision of the DCHRA allegedly violated by the District of Columbia.   Presuming that plaintiffs rely on a provision related to housing, the DCHRA provides that "[i]t shall be an unlawful discriminatory practice to . . . interrupt or terminate, or refuse or fail to initiate or conduct any transaction in real property," and "[t]o include in the terms or conditions of a transaction in real property, any clause, condition or restriction," because of a person's race.  D.C. Code § 2-1402.21(a)(1), (2).  The complaint nowhere alleges a discriminatory reason for an alleged violation of rights under the DCHRA or otherwise attributes the District's actions to plaintiffs' race.  Their DCHRA claim therefore must fail.  *See Neithamer v. Brenneman Property Servs., Inc.*, 81 F. Supp. 2d 1, 3 (D.D.C. 1999) (deeming it plaintiff's burden to establish *prima facie* case of discrimination under DCHRA).

Mere assertions of discrimination and harassment lacking factual allegations to support them, and legal conclusions masquerading as factual allegations, do not support plaintiffs' claims.  Their complaint simply fails to plead sufficient factual allegations from which the Court can infer more than the mere possibility that the District of Columbia has committed misconduct.

The complaint "stops short of the line between possibility and plausibility of entitlement to relief," *Iqbal,* 556 U.S. at 678) (citing *Twombly*, 550 U.S. at 557), and it therefore fails to state claim s upon which relief can be granted.

### III.  CONCLUSION

Because plaintiffs' complaint fails to state claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the DCHRA, the District of Columbia's motion to dismiss will be granted.  Its motion for summary judgment and plaintiffs' motion for sanctions will be denied.  An Order is issued separately.


Signed:         EMMET G. SULLIVAN
                United States District Judge

Dated:          January 6, 2013